# United States District Court
# District of Massachusetts

CADLES OF GRASSY MEADOWS II, LLC,
      Plaintiff,

   v.                        CIVIL ACTION NO. 91-10432-WGY

DONALD J. MACKINNON, III,
DONALD J. MACKINNON, JR.,
      Defendants.

## *MEMORANDUM AND ORDER ON CADLES OF GRASSY MEADOWS II, LLC'S RENEWED MOTION FOR NEW EXECUTION TO ISSUE (#55) AND ON ON DEFENDANTS' CROSS MOTION TO VACATE ORDER GRANTING MOTION OF CADLES OF GRASSY MEADOWS II, LLC  FOR SUBSTITUTION AS PARTY PLAINTIFF, AND FOR OTHER RELIEF (#57)*

COLLINGS, U.S.M.J.

### I. Introduction

On February 4, 1992, the district court (Young, J.) entered a judgment

(#31) in favor of the Federal Deposit Insurance Corporation (the "FDIC") and against Donald J. MacKinnon III, and Donald J. MacKinnon, Jr. (collectively, "the MacKinnons"), in the amount of $1,384,709.47. (*See* #43, Exh. A) No activity appeared in the case until November, 2008, when Cadles of Grassy Meadows II, LLC, ("Cadles"), filed documents purporting to establish Cadles' status as the assignee of the 1992 judgment. (*See* ##38-39) Cadles then moved to be substituted as plaintiff and requested the Court to issue an execution on the 1992 judgment (#43). The motions were allowed, but the request for an execution was vacated on July 2, 2009, because Cadles had failed to provide sufficient notice to the MacKinnons, the judgment debtors. Having corrected the notice problem, Cadles renewed its request for issuance of an execution on July 14, 2009 (#55), and that renewed motion is currently before the Court.

The MacKinnons challenge Cadles' status as assignee of the judgment, and seek to vacate the order substituting Cadles as the plaintiff in this case. (*See* #59, Defendants' Omnibus Memorandum (1) In Opposition to Cadles of Grassy Meadows II, LLC's Renewed Motion for Execution to Issue and (2) In Support of Defendants' Cross Motion to Vacate Order Substituting Cadles of Grassy

Meadows II, LLC as Party Plaintiff, and for Other Relief)  The parties have briefed the issues, (*see* #62, Cadles of Grassy Meadows II, LLC's Opposition to Defendants' Cross Motion to Vacate Order Granting Motion of Cadles of Grassy Meadows II, LLC for Substitution as Party Plaintiff, and for Other Relief; #71, Defendants' Reply to Opposition to Defendants' Cross-Motion to Vacate Order Granting Motion of Cadles of Grassy Meadows II, LLC for Substitution as Party Plaintiff, and for Other Relief), and the Court held a hearing on the issues on October 9, 2009.  For the reasons that follow, the Court allows Cadles' renewed motion for an execution to issue and denies the MacKinnons' motion to vacate the order substituting Cadles as the plaintiff in this action.

## II. Background

According to Cadles, on June 26, 1996, the FDIC originally assigned its interest in the 1992 judgment in this case to an entity called CNF First Associates II, L.P. ("CNF").  (#62 at 1)  Then, according to Cadles, in December 2003, CNF assigned its interest in the judgment to Cadles. (*Id.* at 2)  Cadles has submitted a number of documents that it contends are sufficient to establish Cadles as the proper assignee of the judgment.  The MacKinnons challenge the validity of the two assignments (FDIC to CNF, and CNF to Cadles) on a number

of grounds discussed in more detail below.    In general, however, the

MacKinnons argue that the documents that Cadles has submitted are

insufficient to establish a valid of assignment of the judgment.[1]

### III. Discussion

### A.  Relevant law re: the Validity of Assignments

Under Massachusetts law,[2] "[a] valid assignment may be made by any

words or acts which fairly indicate an intention to make the assignee the owner

of a claim." *Kagan v. Wattendorf & Co., Inc.*, 294 Mass. 588, 596, 3 N.E.2d 275,

279 (1936) (internal quotation marks and citation omitted).   "[N]o specific or

magic words are necessary for its formation." *In re Computer Engineering Assoc.,*

*Inc.,*  337 F.3d 38, 46 (1st Cir. 2003) (citations omitted), and "assignments need

---

[1]

The MacKinnons also challenge Cadles' entitlement to seek an execution under Mass. Gen. L. ch. 235, § 19, which provides that "[if] a judgment remains unsatisfied after the expiration of the [one-year] time for taking out execution thereon [specified in Mass. Gen. L. ch. 235, § 17], the creditor may obtain a new execution by motion to the court in which such unsatisfied judgment was rendered." Inasmuch as the MacKinnons' argument here (*see* #59 at 7-10) depends on their disagreement with the reasoning of *First Nat. Bank of Boston v. Bernier*, 50 Mass. App. Ct. 756, 741 N.E.2d 95 (2001) (construing statute), the Court rejects this argument out of hand.  *See generally Andrew Robinson Intern., Inc. v. Hartford Fire Ins. Co.*, 547 F.3d 48, 51 (1st Cir. 2008) (where state's highest court has not spoken on issue, federal court may look to decisions of state's lower courts in predicting the path the highest court would likely take).

[2]

An argument could be made (although the parties do not make it) that New York law governs the first assignment from the FDIC to CNF, because the "Assignment and Bill of Sale" executed on June 26, 1996, states that it is governed by the laws of the State of New York.  The Court notes, however, that the law of the state of New York is substantially the same as that of the Commonwealth of Massachusetts on the question of the validity of assignments.  *See In re Computer Engineering Assoc., Inc.*, 337 F.3d 38, 46 n.12 (1st Cir. 2003) (noting that law of New York and Massachusetts on the validity of assignments is not "materially different").

4

not be in writing to be enforceable by the court." *Cheswell, Inc. v. Premier Homes and Land Corp.*, 326 F. Supp.2d 201, 202 (D. Mass. 2004) (applying Massachusetts law). "Rather, 'an assignment is made when the assignor intends to assign a present right, identifies the subject matter assigned and divests itself over the subject matter assigned.'" *Id.* (quoting *In re Gull Air, Inc.*, 90 B.R. 10, 13 (Bankr. D. Mass. 1988)). With these principles in mind, the Court turns to the evidence presented by Cadles.

## B. The Evidence

Because the MacKinnons challenge the validity of both the assignment from the FDIC to CNF, and the assignment from CNF to Cadles, the Court considers the documentary evidence supporting each putative assignment sequentially, along with the MacKinnons' challenges to that evidence.

### 1. *The First Assignment from FDIC to CNF*

According to Cadles, the FDIC originally assigned its interest in the judgment to CNF on June 26, 1996. To establish the validity of the assignment, Cadles has presented several documents.[3] The first is a document entitled

---

[3]

The MacKinnons argue that Cadles has failed to authenticate these documents properly, and previously moved to strike the affidavit of Carole Kendall (#63) ("Kendall Affidavit"), through which Cadles seeks to <u>Footnote 3 (continued)</u>
authenticate these documents. The Court denied that motion, noting that it would consider only those portions of the materials that are admissible under the Federal Rules of Evidence. *See* Order dated October

"Assignment and Bill of Sale," dated June 26, 1996.  (*See* #63 Affidavit of Carole Kendall, Exh. 1)[4]  The document states that the FDIC "has agreed to contribute to [CNF], and [CNF] has agreed to accept from the [FDIC], all of the [FDIC's] right, title and interest, if any, in and to the 'JDCs' and 'Small-Balance Assets' (as such terms are defined in the Contribution Agreement) listed on Exhibit A attached hereto (the 'Assets')." (#63, Exh. 1)  A redacted "Exhibit A" is attached called "Bulk Sale JDFR1," which lists, *inter alia*, an asset called "Center Village Realty Tru[st]" valued at $899,831.35.   The Assignment and Bill of Sale is notarized.

In addition, Cadles has submitted two documents entitled "Assignment of Judgment," in which the FDIC purports to assign the judgment in this case to CNF.  (*See* #38, Exh. B; #43, Exh. B)  The two documents are dated November 3, 2008, and January 28, 2009, and are identical except that the document dated January 28, 2009 contains the following language: "Effective Date-June

---

13, 2009.  The Court notes that Cadles has submitted a Second Affidavit of Carole Kendall (#68) that apparently seeks to correct a number of deficiencies contained in the first.  The Court, in its discretion, considers the second affidavit. *Setterlund v. Potter*, 597 F. Supp.2d 167, 174 (D.Mass. 2008) (the court "has discretion to allow a party to cure deficiencies in supporting documentation") (internal quotation marks and citation omitted).

To the extent that the MacKinnons suggest that the documents discussed here have been improperly authenticated, the Court disagrees for the reasons stated *infra* at 8-10.

[4]

The citations here to the parties' exhibits are to the parties' filings themselves; the exhibit numbers as cited do not necessarily correspond to the exhibit numbers as they appear on CM/ECF.

26, 1996." Both documents specifically reference the judgment  ("United States District Court, District of Massachusetts, Judgement/Cause No. 91-10432-Y"), and the judgment amount as follows:  "$1,384,709.47, plus interest, costs, and attorney fees, if any.  Purchase amount - $899,831.35."

The MacKinnons challenge the validity of the assignment from the FDIC to CNF on a variety of fronts.   First, they seek to cast doubt on the validity of the "Assignment of Judgment," executed in 2008 and again in 2009, because Cadles submitted different versions of the same documents.  The MacKinnons suggest that the inclusion of the language "Effective Date-June 26, 1996" in the assignment executed on January 28, 2009 amounts to a transparent and spurious "backdating effort," (#59 at 7), and the MacKinnons urge the Court to draw the inference that "Cadles knew that its representation to the Court in the Substitution/Execution Motion that it held the legal interest in the Judgment was legally inaccurate." ( *Id.* at 7)  The Court declines to draw such an inference.  Rather, it seems clear to the Court that the later documents were intended to memorialize the documents that had been executed on June 26, 1996--Cadles readily concedes that it asked the FDIC to execute a second assignment (*see* #62 at 2), presumably to memorialize the initial assignment in

1996. Thus, the Court need not dwell on the particulars of the MacKinnons'
other arguments--for example, suggesting that these documents, executed in
2008 and 2009, were without legal effect because CNF had ceased to exist as
a corporate entity on July 1, 2004, and because they were signed by Cadles
under a power of attorney that CNF had granted to Cadles in 2003. (*See* #71
at 8; #59, Exh. 7) The important point for present purposes is that the January
28, 2009 document evidences the FDIC's intent to transfer the judgment to CNF,
and the FDIC's acknowledgment that the assignment had an effective date of
June 26, 1996. For that reason, the Court disagrees with the MacKinnons'
contention that "there is no evidence in the record to permit the conclusion that
CNF obtained title to the Judgment by virtue of the Assignment and Bill of
Sale." (#71 at 18) *Cf. Cheswell*, 326 F. Supp.2d at 202 (affidavits executed in
2004 sufficient to establish that in 2002 parties had "the then present intention
to transfer all of their interest").

   If more were needed, the Court concludes that the earlier documents (and
certainly the totality of documents) are sufficient to evidence the FDIC's intent
to assign its interest in the judgment on June 26, 1996. The "Assignment and
Bill of Sale," dated June 26, 1996 is notarized, and so there seems little question

that the document was executed by the FDIC.  *See* Fed. R. Evid. 902(8).   The

document states that the FDIC "has agreed to contribute to [CNF], and [CNF]

has agreed to accept from the [FDIC], all of the [FDIC's] right, title and interest,

if any, in and to the 'JDCs' and 'Small-Balance Assets' (as such terms are defined

in the Contribution Agreement) listed on Exhibit A attached hereto (the

'Assets')."  (#63, Exh. 1)  Furthermore, the document states that CNF  "may

collect or receive any monies due under the Assets." (*Id.*)  Exhibit A identifies

"JDC" sales, including an asset called "Center Village Realty" valued at

$899,831.35.  This dollar amount coincides precisely with the figure listed on

the 2008 and 2009 "Assignment of Judgment," as the apparent book value of

the asset.  The Court does not share the MacKinnons' concern that the earlier

assignment does not specifically mention the Judgment (the later documents

do), or that the Contribution Agreement is not attached (*see* #71 at 9), as it

seems clear from the sum of the documents that the FDIC intended to assign the

bundle of rights connected to this asset, including the right to "collect or receive

any monies due under the Assets." *Cf. Quaranto v. Silverman*, 345 Mass. 423,

426-427, 187 N.E.2d 859, 862 (1963) ("Generally, the assignment of a debt

carries with it every remedy or security that is incidental to the subject matter

of the assignment and could have been used or made available to the assignor.")(citations omitted); *cf. also Quantum Varde Asset Fund LLC v. Zuffle*, 73 Fed. App'x 672, 676, 2003 WL 21961185, at *4 (5th Cir. Aug. 18, 2003) (unpublished) (interpreting identical contract language in FDIC assignment and concluding that, under New York law, "[t]he chosen language would seem, clearly, to suggest an intention to transfer any and all interests related to a given asset").

### 2. *The Second Assignment from CNF to Cadles*

To support the validity of the assignment from CNF to Cadles, Cadles has submitted a collection of documents. The first is called "Loan Purchase and Sale Agreement," and is dated December 29, 2003. (#63, Exh. 2) This document states that Cadles "has expressed to [CNF] its intent to purchase certain Loans described in 'Exhibit A' attached to this Agreement (the 'Loans')," and CNF "desires to sell, and [Cadles] desires to purchase, all of [CNF's] right, title and interest in, and to, the Loans on the terms and conditions as set forth below." (*Id.* at 1) This document also references a "Blanket Assignment of Assets executed by [CNF] assigning to [Cadles] all of the Loans listed in Exhibit 'A' attached hereto." (*Id.* at 3) The "Blanket Assignment of Assets" itself purports

to assign to Cadles "All those certain Loans listed in the attached Exhibit 'A'."
(#63, Exh. 2)  The Blanket Assignment of Assets is dated December 30, 2003,
and is notarized.  The Kendall Affidavit states that Kendall has provided a single
page from this "Exhibit A,"referenced in both documents; that page contains a
schedule listing "Center Village Realt[y]" and a balance of $899,831.35.  (*See*
#68 ¶10; #63, Exh. 3)

   In addition, Cadles has submitted a document dated December 29, 2003,
entitled "Power of Attorney" in which CNF purports to grant Cadles a power of
attorney "with respect to those certain judgment, deficiencies, charge-offs and
small-balance assets (the 'Assets') described in Exhibit 'A' attached to that
certain Loan Purchase and Sale Agreement, dated as of December 29, 2003 . .
. ."  (#63, Exh. 4)  The Power of Attorney is notarized.  Finally, Cadles submits
two documents entitled "Assignment of Judgment," dated November 12, 2008,
and February 5, 2009, purporting to assign the judgment at issue from CNF to
Cadles.  (#55, Exh. C, #41)   The documents are identical except that the
second assignment contains the language "effective as of December 29, 2003."
Cadles purports to have exercised its power of attorney in signing these
documents on CNF's behalf.

The MacKinnons challenge the sufficiency of these documents in several respects.  First, they argue that the documents dated 2008 and 2009 have no legal effect because CNF dissolved as a corporate entity in 2004.  The Court concludes that it is unnecessary to rely on these two documents in order to find a valid assignment, so it need not consider this argument further.

Next, the MacKinnons contend that Cadles has not properly authenticated the "Loan Purchase and Sale Agreement," dated December 29, 2003, and the "Blanket Assignment of Assets" dated December 30, 2003.  The Court begins by noting that "[t]he authentication requirement is rarely onerous; in many instances, a single sentence will suffice, indicating that the document is what it appears to be." *Goguen ex rel. Estate of Goguen v. Textron, Inc.*, 234 F.R.D. 13, 16-17 (D. Mass. 2006).  Here, Cadles has submitted the affidavit of Carole Kendall to authenticate these documents.  (*See* #68 Second Affidavit of Carole Kendall)  Kendall states that she is "an account officer for Cadles" and that "[i]n [her] capacity as an account officer, [she] oversee[s] and monitor[s] certain obligations owed to Cadles . . . including the collection of the Judgment that is in question in this case." (#68 ¶ 1) She also states that she is "the keeper of the records for Cadles regarding this matter." (#68 ¶ 4) Although the Court agrees

that Kendall's affidavit contains a number of statements that seek improperly to characterize the nature and content of certain documents that she has attached to her affidavit (and the Court, accordingly, disregards those statements), the Court disagrees that Kendall lacks the personal knowledge to authenticate the documents, as the MacKinnons claim. "The test of authenticity is straightforward . . . [and] 'is satisfied by evidence sufficient to support a finding that the matter in question is what its proponent claims.'" *United States v. Holmquist*, 36 F.3d 154, 167 (1st Cir. 1994) (quoting Fed. R. Evid. 901(a)), *cert. denied*, 514 U.S. 1084 (1995).  So, "'Federal Rule of Evidence 901(a) requires the trial court to determine if there is a reasonable probability that the evidence is what it is purported to be.'" *United States v. Perez-Gonzalez*, 445 F.3d 39, 47 (1st Cir. 2006) (quoting *United States v. Carlos Cruz*, 352 F.3d 499, 506 (1st Cir. 2003), *cert. denied sub nom. Velez v. United States,* 543 U.S. 857 (2004)); *see also United States  v. Alicea-Cardoza,* 132 F.3d 1, 4 (1st Cir. 1997) ("To establish authenticity, the proponent need not rule out 'all possibilities inconsistent with authenticity, or . . . prove beyond any doubt that the evidence is what it purports to be. Rather, the standard for authentication, and hence for admissibility, is one of reasonable likelihood.'") (quoting *Holmquist*, 36 F.3d at

13

168).  Moreover,

> [t]here is no single way . . . to authenticate evidence.
> As [the First Circuit] has recognized on more than one
> occasion:
>
>> [T]he direct testimony of a custodian or a
>> percipient witness is not a *sine qua non* to
>> the authentication of a writing. Thus, a
>> document's appearance, contents,
>> substance, internal patterns, or other
>> distinctive characteristics, taken in
>> conjunction with circumstances, can, in
>> cumulation, even without direct testimony,
>> provide sufficient indicia of reliability to
>> permit a finding that it is authentic.

*United States v. Garcia*, 452 F.3d 36, 40 (1st Cir. 2006) (internal quotation
marks and citations omitted).

Here, the Court is satisfied that Kendall, who states that she manages this
account and that she maintains the records connected with the account, has
sufficient personal knowledge to establish the authenticity of the documents.

Thus, the question is whether the documents submitted are sufficient to
establish the validity of the assignment from CNF to Cadles.  In the Court's
view, the "Blanket Assignment of Assets" is the operative document, and it
speaks for itself.  As noted, the document establishes CNF's intent to assign
"[a]ll those certain Loans listed in the attached Exhibit 'A'," and Exhibit A

includes a schedule listing an asset called "Center Village Realt[y]"and noting a balance of $899,831.35.

The MacKinnons complain, however, that Cadles has failed to establish a link between the asset "Center Village Realty" referenced in the earlier documents, and the judgment at issue here.   The Court admits to some confusion stemming from the MacKinnons' argument in this regard.   They argue that "[e]ven assuming that the entry 'Center Village Realty Tru' . . . refers to an entity with a name identical to the borrower on the loan guaranteed by the defendants (Center Village Realty Trust), the defendants ask the court to pause for a moment to consider how many counties exist in the United States of America and how many realty trusts could be named 'Center Village Realty Trust.'" (#72 at 15)   The MacKinnons have offered no affidavit disavowing knowledge of an entity called "Center Village Realty Trust," and the argument here seems to suggest that they cannot.   In any event, this argument seems borne of desperation especially where the MacKinnons have demonstrated no reason (other than speculation) that the Court should not draw the reasonable inference that the Center Village Realty Trust with a book value of $899,831.35 referenced in the schedule of assets is the same asset referenced in the January 28, 2009 document with a purchase amount of $899,831.35.

Finally, the MacKinnons state that they believe that a defendant who has since passed away (Mr. Whitty) has made substantial progress on satisfying the judgment. (*See* #50 at 3)  The MacKinnons have offered no evidence to support that assertion.

### IV.  Order

For all the above reasons, it is ORDERED that Cadles of Grassy Meadows II, LLC'S Renewed Motion for New Execution to Issue (#55) be, and the same hereby is, ALLOWED, and that Defendants' Cross Motion to Vacate Order Granting Motion of Cadles of Grassy Meadows II, LLC for Substitution as Party Plaintiff, and for Other Relief (#57), be, and the same hereby is, DENIED.

Review of the within Memorandum and Order, Etc., is governed by Rule 72(a), Fed. R. Civ. P., since the motions were referred for decision rather than for a report and recommendations. *See* ##65 & 70.  Therefore, any objections to the Memorandum and Order, Etc., must be filed within 14 days of today's date.

/s/ Robert B. Collings

ROBERT B. COLLINGS
United States Magistrate Judge

March 11, 2010

16